**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lorenza Valdez, | No. CV-18-0921-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| City of Phoenix, et al., | |
| Defendants. | |

This case arises out of the death of Francisco Valdez. His mother, Plaintiff Lorenza Valdez, asserts state law wrongful death and § 1983 claims against Defendants City of Phoenix and Officers Christian Perez, Shawn Magness, and Austin Stephenson. Doc. 1. Defendants move for summary judgment (Doc. 32) and Plaintiff has not responded. Based on the reasons set forth below, the Court will grant the motion.[1]

**I.  Summary Judgment Standard.**

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine

---

[1] This case was recently transferred to the undersigned judge with the motions already pending.

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides:

> If a party fails to . . . properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it[.]

Fed. R. Civ. P. 56(e)(3). Thus, the party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth *specific facts* showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.11 (1986) (emphasis added); *see* LRCiv 56.1(b) (requiring the party opposing summary judgment to present evidence that establishes a genuine issue of material fact). Even without Plaintiff having made such a showing, the Court will consider the merits of Defendants' motion.

## II. Undisputed Facts.

Defendants moved for summary judgment on March 8, 2019. Doc. 32. Plaintiff has not responded to the motion despite being warned that the failure to demonstrate a genuine issue of material fact may entitle Defendants to judgment as a matter of law under Rule 56. Doc. 34. Based on Defendants' statement of facts and supporting evidence (Doc. 33), the following facts are undisputed for purposes of summary judgment. *See* Fed. R. Civ. P. 56(e)(3).

On March 23, 2017 Officers Perez, Magness, and Stephenson responded to a domestic violence disturbance at Plaintiff's trailer. Doc. 33 ¶ 19. Plaintiff had called 911 when her son, Francisco Valdez, appeared to be under the influence of drugs and became aggressive. *Id.* ¶ 17. Plaintiff did not inform the 911 operator or the Officers that Francisco had a mental illness nor that he had not been taking his prescribed medication. *Id.* ¶¶ 18, 21.

Officers Perez, Magness, and Stephenson confronted Francisco as he was lying on the couch wearing only boxer shorts (*id.* ¶¶ 23-28), and they allowed him to go into the

bedroom to get dressed (*id.* ¶ 28). As the Officers were following Francisco into the bedroom, Plaintiff informed them that Francisco had a warrant out for his arrest. *Id.* ¶ 30. Officer Perez went outside with Plaintiff to verify whether Francisco in fact had a warrant, while Officers Magness and Stephenson remained inside with Francisco. *Id.* ¶ 32.

Once dressed, Officer Magness asked Francisco to return to the couch. *Id.* ¶¶ 33-34. As Francisco walked toward the couch, he abruptly entered the kitchen and retrieved a knife from a drawer. *Id.* ¶¶ 35-36. He lifted his hand holding the knife and charged toward Officer Magness, who fell back into a glass table that shattered underneath him. *Id.* ¶¶ 37-38. Francisco then turned toward Officer Stephenson and charged at him with the knife, causing Officer Stephenson to back away and trip over a couch behind him. *Id.* ¶¶ 40-41. After recovering from his fall through the glass table, Officer Magness saw Francisco attacking Officer Stephenson with stabbing motions that made it appear as if Francisco had stabbed Officer Stephenson. *Id.* ¶¶ 41-42. Officer Magness then fired several shots that hit and killed Francisco. *Id.* ¶ 43. A knife was found near Francisco's body and was covered in blood stains, later matched to Francisco's DNA. *Id.* ¶¶ 47, 48.

**III. Discussion.**

    **A. Plaintiff's Wrongful Death Claim.**

Plaintiff asserts a state law wrongful death claim in count one of her complaint. Doc. 1 ¶¶ 48-51. An action for wrongful death is a statutory negligence action requiring a showing that the alleged tortfeasor breached a reasonable standard of care. *See* A.R.S. § 12-612. The Defendant officers correctly contend that they are entitled to immunity under A.R.S. § 13-413 as well as a presumption of reasonableness under A.R.S. § 12-716.

Under Arizona law, "[n]o person . . . shall be subject to civil liability for engaging in conduct otherwise justified pursuant to the provisions of this chapter." *Id.* § 13-413. Law enforcement officers are justified in using deadly force "to defend [themselves] or third person[s] from what the peace officer reasonably believes to be the use or imminent use of deadly physical force." *Id.* § 13-410(c). A law enforcement officer is presumed to act reasonably where he uses "deadly physical force . . . to protect himself or another

person against another person's use or attempted use of physical force." *Id.* § 12-716(A)(1)(a).

There are no triable issues as to whether the Defendant Officers wrongfully caused Francisco's death because, based on the undisputed facts set forth above, Officer Magness was justified in using deadly force. Francisco retrieved a knife from the kitchen drawer and attempted to attack both Officers Magness and Stephenson. Doc. 33 ¶¶ 35-38. Officer Magness saw Francisco attacking Officer Stephenson with stabbing motions that made it appear as if Francisco had stabbed Officer Stephenson. *Id.* ¶¶ 41, 42. Moreover, Officer Magness shot Francisco during the commission of an aggravated assault with a deadly weapon on a peace officer, in violation of A.R.S. § 13-204(a)(2), (8). The only reasonable inference a jury could draw from these undisputed facts is that Officer Magness acted reasonably (*see id.* § 12-716(A)(1)(a)) and was justified in using deadly force to defend Officer Stephenson from what he "reasonably believe[d] to be the use or imminent use of deadly physical force" (*see id.* § 13-410(c)). Accordingly, the Court will grant summary judgment in favor of Officers Perez, Magness, and Stephenson as it relates to Plaintiff's wrongful death claim.

The Court will also grant summary judgment in favor of the City of Phoenix. Municipalities are presumed to have reasonably hired and trained its law enforcement officers to use deadly force in defense of self or others. *See* A.R.S. § 12-716(A)(2). But even without this presumption, nothing in the record indicates that the City acted unreasonably in training its officers or handling this incident. As Defendants note, there was a "rigorous investigation" following the shooting (Doc. 33 ¶ 49), and Officer Magness was cleared of any wrongdoing by the Maricopa County Attorney's Office, which found that he "did not commit any act that warrants criminal prosecution." Doc. 33-1 at 136.

**B.     Plaintiff's § 1983 Claim.**

    **1.     Standing.**

Plaintiff asserts a civil rights claim under 42 U.S.C. § 1983, alleging excessive force and loss of familial association. Doc. 1. The general rule is that constitutional rights may

not be asserted vicariously. *See Alderman v. United States*, 394 U.S. 165, 174 (1969). "In § 1983 actions, however, the survivors of an individual killed as a result of an officer's excessive use of force may assert a Fourth Amendment claim on that individual's behalf if the relevant state's law authorizes a survival action." *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d at 365, 369 (9th Cir. 1998) (citing 42 U.S.C. § 1988(a)); *Smith v. City of Fontana*, 818 F.2d 1411, 1417 (9th Cir.1987)). "The party seeking to bring a survival action bears the burden of demonstrating that a particular state's law authorizes a survival action and that the plaintiff meets that state's requirements for bringing a survival action." *Id.*

Plaintiff's complaint indicates that "[t]he Estate of Francisco Valdez is a legal entity that *will* be established under the probate laws of the State of Arizona[]," and that "Plaintiff Lorenza *will* be the Estate's personal representative." Doc. 1 at 2 (emphasis added). Under Arizona's survival statute, "a cause of action . . . shall survive the death of the person entitled thereto or liable therefor, and may be asserted by or against the *personal representative* of such person." A.R.S. § 14-3110 (emphasis added). To date, the Court is unaware that Plaintiff has initiated any probate for the Estate of Francisco Valdez, or that she has been appointed as his personal representative. Doc. 32 at 8. Because Plaintiff is not currently Francisco's personal representative, the Court finds that she does not have standing to pursue a survival action under § 1983.

### 2. Liability Under § 1983.

Even if Plaintiff had standing, she cannot establish liability under § 1983. Plaintiff must show that (1) a right secured by the Constitution or laws of the United States was violated and (2) the violation was committed by a person acting the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). Plaintiff alleges that Defendants violated Francisco's Fourth Amendment rights based on the use of excessive force and violated her right to familial association as guaranteed by the First and Fourteenth Amendments. Doc. 1 ¶¶ 58.

/ / /

### a. Fourth Amendment Use of Excessive Force.

Plaintiff alleges that "[s]hooting Francisco was an excessive use of force and, as such, violated Francisco's civil rights." Doc. 1 at 6. Whether force is excessive depends on "whether the officers' actions [were] 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989); *see Tatum v. City and Cty. of San Francisco*, 441 F.3d 1090, 1095 (9th Cir. 2006); *Lolli v. Cty. of Orange*, 351 F.3d 410, 415 (9th Cir. 2003). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. Whether the use of deadly force is objectively reasonable "depends on several factors, including the severity of the crime that prompted the use of force, the threat posed by a suspect to the police or to others, and whether the suspect was resisting arrest." *Tatum*, 441 F.3d at 1095.

The use of deadly force here was objectively reasonable and does not constitute a Fourth Amendment violation. The officers were responding to a 911 domestic disturbance call and courts "take very seriously the danger that domestic disputes pose to law enforcement officers[.]" *Mattos v. Agarano*, 661 F.3d 433, 450 (9th Cir. 2011). There is little doubt that any officer arriving at the scene reasonably could have been concerned about his or her safety and that of others, including any potential victim. In failing to respond to Defendants' motion, Plaintiff has presented no evidence to dispute Defendants' assertion that Francisco grabbed a knife from the kitchen and attacked Officers Magness and Stephenson. Doc. 33 ¶¶ 35-42. Moreover, before the shooting, Francisco ignored verbal commands from the officers (Doc. 33-1 ¶ 14) and Officer Magness believed that Francisco had stabbed Officer Stephenson (Doc. 33 ¶¶ 41-42). The Court finds no triable issue because Francisco was an "immediate threat" to Officers Magness and Stephenson, which provided justification for the use of deadly force. *See Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010) ("The 'most important' factor under Graham is whether the suspect posed an "immediate threat to the safety of the officers or others.") (citation

omitted); *Ericson v. City of Phoenix*, No. CV-14-01942-PHX-JAT, 2016 WL 6522805, at *14 (D. Ariz. Nov. 3, 2016) ("For a court to find justification for the use of significant force, 'the objective facts must indicate that the suspect poses an immediate threat to the officer or a member of the public.'") (citation omitted).

### b. Fourteenth Amendment Right to Familial Association.

Plaintiff further alleges Officer Magness was "deliberately indifferent to the rights of both Francisco and [Plaintiff] and demonstrated [his] purpose to harm. As such, the Defendants violated [Plaintiff's] right of familial association as guaranteed by the First and Fourteenth Amendments to the United States Constitution." Doc. 1 ¶¶ 57-58. Stated differently, the same allegation of excessive force giving rise to the Fourth Amendment claim for Francisco's loss of life also gives Plaintiff "a substantive due process claim based on their loss of his companionship." *Fontana*, 818 F.2d at 1420-21.

The Ninth Circuit recognizes a Fourteenth Amendment liberty interest of parents in the companionship and society of their adult children, even when the deprivation of that interest is incidental to the state action. *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004); *Lee v. City of Los Angeles*, 250 F.3d 668, 685–86 (9th Cir. 2001); *Moreland*, 159 F.3d at 371. But absent an underlying constitutional violation, a derivative familial association claim cannot survive. *See Lacy v. Cty. of Maricopa*, 631 F. Supp. 2d 1197, 1212-13 (D. Ariz. 2008). Because the Officers did not violate Francisco's Fourth Amendment rights for reasons stated above, the Court will grant summary judgment in their favor on Plaintiff's Fourteenth Amendment claim.

Even if there were a Fourth Amendment violation, the Supreme Court has made clear that only conduct which "shocks the conscience" is cognizable as a substantive due process violation under the Fourteenth Amendment. *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (citing *Rochin v. California*, 342 U.S. 165, 172-73 (1952)). Generally, a showing of deliberate indifference to the violation of constitutional rights is sufficient to meet the "shocks the conscience" standard. Where, however, deliberation was not possible and the officers "faced an evolving set of circumstances that took place over a short period

of time necessitating 'fast action,'" the plaintiffs must show that the officers acted with the "purpose to harm." *Porter v. Osborn*, 546 F.3d 1131, 1139 (9th Cir. 2008) (quoting *Lewis*, 523 U.S. at 853).

Because deliberation was not possible here, the purpose-to-harm standard applies and Plaintiffs cannot meet it. Doc. 32 at 11. There is no genuine dispute of fact that this was a quickly evolving situation that started as a domestic disturbance call and escalated into an altercation in which Officer Magness resorted to deadly force shortly after confronting Francisco. Moreover, this altercation occurred in close proximity in a trailer with an assailant who had a knife in his hand and appeared to be stabbing Officer Stephenson. Officer Magness made a "snap judgment" without having time to deliberate. *See Porter*, 546 F.3d at 1137. Nor is there evidence Officer Magness shot Francisco with a "purpose to harm" him aside from the legitimate purpose of forestalling an attack with a deadly weapon. The Court accordingly finds no triable issue with regard to Plaintiff's Fourteenth Amendment right to familial association claim.

### c. First Amendment Right to Familial Association.

Plaintiff also alleges Defendants violated her right of familial association as guaranteed by the First Amendment. Doc. 1 ¶ 58. Despite being an independent constitutional basis, Defendants have not addressed this claim in their motion. *See* Doc. 32 at 10.

The Ninth Circuit has stated that, like the Fourteenth Amendment, "[t]he First Amendment also protects family relationships[] that presuppose deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life." *Keates v. Koile*, 883 F.3d 1228, 1236 (9th Cir. 2018) (internal quotation marks and citation omitted); *see also Lee*, 250 F.3d at 685. But there appears to be "no Ninth Circuit case setting out specifically the conduct or elements that constitute violation of familial association under the First Amendment." *Kaur v. City of Lodi*, 263 F. Supp. 3d 947, 973 (E.D. Cal. 2017) (citation omitted). Other courts in this Circuit have

held that "First Amendment rights to familial association are measured by the same standard as Fourteenth Amendment rights to familial association." *Id.*

In *Lee*, 250 F.3d at 686, the Ninth Circuit addressed the right to familial association under both the First and Fourteenth Amendments in the context of a resident's wrongful arrest, extradition, and incarceration. There, the court held that "plaintiffs . . . adequately alleged that defendants' actions and policies constituted an 'unwarranted interference' with [the resident's] and his mother's right to familial association under *both* the First and Fourteenth Amendments." *Id.* at 686 (emphasis added). The court drew the phrase "unwarranted interference" from an earlier Ninth Circuit case dealing with a substantive due process (Fourteenth Amendment) claim asserted by the children of a man killed during a police encounter. *See Fontana*, 818 F.2d at 1418. Thus, even though *Lee* arose out of a wrongful arrest claim, the same analysis applies in the context of police shootings.

Because there is no triable issue on Plaintiff's Fourteenth Amendment right to familial association claim, there cannot be one under the First Amendment. The Court will grant summary judgment in favor of Defendants on Plaintiff's claim of loss of familial association.

### d. Qualified Immunity.

Even if Plaintiff's constitutional claims had merit, Defendant Officers Perez, Magness, and Stephenson contend that they are entitled to qualified immunity. Doc. 32 at 12. A defendant in a § 1983 action is entitled to qualified immunity from civil liability if his conduct does not violate clearly established constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "In a suit against a police officer under § 1983, the court's initial inquiry is whether, 'taken in the light most favorable to the party asserting the injury,' the facts alleged show that the officer's conduct violated a constitutional right." *Ericson*, 2016 WL 6522805, at *16 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). If such a violation is shown, "the court must then determine whether the right violated was so clearly established that the officials are not entitled to qualified immunity." *Id.*

As shown above, there is no evidence in the record that Defendants violated Plaintiff's constitutional rights. Officers Lopez, Magness, and Stephenson are thus entitled to qualified immunity and the Court need not determine whether any hypothetical harm was "clearly established" at the time of the shooting. *See Harlow*, 457 U.S. at 818.

### 3. City of Phoenix's Liability.

Plaintiff also directly asserts a claim against the City of Phoenix, alleging its "unconstitutional policies, practices and procedures, including but not limited to a failure to properly train its police officers to deal with persons with mental illness(es)," caused Francisco's death. Doc. 1 ¶ 59. Defendants contend that Plaintiff's failure to establish a predicate constitutional violation eliminates her alleged *Monell* violation. Doc. 32 at 15. The Court agrees.

The Supreme Court has held that municipalities are "persons" subject to liability under § 1983 where "action pursuant to official municipal policy of some nature cause[s] a constitutional tort." *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992) (quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978)). "The Court made clear that the municipality itself must cause the constitutional deprivation and that a city may not be held vicariously liable for the unconstitutional acts of its employees under the theory of respondeat superior." *Id.* To establish municipal liability, a Plaintiff must show: (1) that he was denied a constitutional right; (2) the municipality had a policy; (3) the policy reflected a "deliberate indifference" to the plaintiff's constitutional right; and (4) the policy was the "moving force behind the constitutional violation." *Anderson v. Warner*, 451 F.3d 1063, 1070 (9th Cir. 2006) (citations omitted); *see Galen v. Cty. of Los Angeles*, 477 F.3d 652, 667 (9th Cir. 2007) (a plaintiff seeking to establish municipal liability must demonstrate that a municipality had a "deliberate policy, custom, or practice that was the 'moving force' behind the constitutional violation he suffered.").

In failing to respond, Plaintiff has not identified there any triable issue with respect to any of her constitutional claims. Nor has Plaintiff identified any policy that would

provide a basis for holding the City of Phoenix liable under *Monell*. Accordingly, the Court will grant summary judgment in favor of Defendants.

**IT IS ORDERED:**

1. Defendants' motion for summary judgment (Doc. 32) is **granted**.
2. The Clerk is directed to terminate this action.

Dated this 21st day of October, 2019.

*David G. Campbell*
David G. Campbell
Senior United States District Judge